# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| NORTHWEST MOTORSPORT, INC., a Washington Corporation, | No. 52799-5-II |
| Respondent, | |
| v. | |
| SUNSET CHEVROLET, INC., a Washington Corporation, SUNSET TRUCKS, INC., a Washington Corporation, SUNSET FORD, INC., a Washington Corporation, PHILIP MITCHELL, in his personal and professional capacity, and JOHN DOES Nos 1-20, in their personal and professional capacity, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, C.J. — Sunset Chevrolet, Inc., Sunset Truck, Inc., and Philip Mitchell (collectively "Sunset") appeal the superior court's judgment in favor of Northwest Motorsport, Inc. (NW Motorsport) and various orders granting NW Motorsport's motions for partial summary judgment supporting that judgment. Sunset argues that the superior court erred in its interpretation of the settlement agreement governing the parties' dispute. Sunset also argues that the superior court erred by making credibility determinations on summary judgment in ruling on the permanent injunction. We affirm the superior court's orders and judgment.

Sunset also argues that the superior court erred in finding that Sunset's representatives failed to truthfully answer questions under oath in a prior proceeding in an order imposing

discovery sanctions. However, because Sunset does not appeal the order imposing discovery sanctions and the superior court's finding does not prejudicially affect any order or ruling Sunset is appealing, we do not review the superior court's finding.

FACTS

Sunset and NW Motorsport both sell vehicles, primarily trucks. Mitchell is the president of Sunset and Michael Conley is Sunset's director of marketing.

A.      2011 LAWSUIT (TRADEMARK INFRINGEMENT) AND SETTLEMENT AGREEMENT

On December 13, 2011, NW Motorsport filed a complaint against Sunset for trademark infringement based on Sunset's use of NW Motorsport's registered trademarks in Sunset's advertisements. The complaint also alleged that Sunset registered 34 website domain names associated with NW Motorsport and used the domain names to redirect customers to Sunset's website. The complaint alleged (1) false designation and unfair competition, (2) cybersquatting, (3) violation of the consumer protection act, and (4) trademark imitation.

After mediation, Sunset agreed to pay NW Motorsport $75,000 and NW Motorsport agreed to dismiss the complaint against Sunset. The settlement agreement contained the following provisions,

> 4.      Sunset agrees not to use in advertising in any manner or variation the terms "Northwest Motorsport," "NWMSrocks," or the words "truck" or "trucks" consecutively in the same phrase or sentence.
>
> . . . .
>
> 11.      Any dispute regarding compliance with the terms of the settlement agreement will be arbitrated by Charles Burdell or, if he is unavailable, by a mutually agreed arbitrator. Liquidated damages of $5,000 per violation, and actual attorneys' fees and costs shall be awarded to the prevailing party.

Clerk's Papers (CP) 83-84. The lawsuit was dismissed with prejudice based on the settlement agreement.

B.      2015 ARBITRATION (VIOLATIONS OF SETTLEMENT AGREEMENT)

From June 2015 through July 2015, Sunset violated the settlement agreement by using prohibited terms in radio and television ads. Sunset also violated the settlement agreement by using prohibited terms in Craig's List postings in order optimize search engine results. NW Motorsport's claims regarding these violations of the settlement agreement proceeded to arbitration before Judge Burdell pursuant to the settlement agreement.

The radio and television ads were broadcast a total of 2,334 times. Sunset also posted more than 40,000 Craig's List ads that violated the settlement agreement between June and December. Judge Burdell determined that Sunset "did exactly what they contracted not to do two years and two months earlier." CP at 169. The preliminary arbitration award contained the following statement regarding the calculation of liquidated damages,

> During closing argument, plaintiff asserted a fair and equitable award of liquidated damages would be in excess of $30,000,000. This would award to plaintiff $5,000 for each time the offending ad was broadcast on radio and television, each time it was used in social media and each time the defendants posted Craig's List ads which breached the agreement. After I indicated during closing argument that I felt such an award would be unconscionable, and perhaps, ludicrous, plaintiff, in its post-hearing briefing suggested that liquidated damages should be "cut off on August 1, 2015". Plaintiff then calculated the award on this basis to be $9,765,000 as an "absolute floor." This would still be an unconscionable result.
>
> The agreement does not define the term "violation". A more reasonable result is achieved by construing the term "violation" as each time defendants engaged in an activity that breached the agreement, regardless of how many ads or posting were actually created. Defendants arranged for the offending ad to run 46 times on radio, television, Facebook, Instagram and YouTube which would justify an award of $230,000. The Craig's List posting were engaged individually, defendants were charged $5 for each posting. The procedure plaintiff suggested to

3

"cut off" the violations temporally allows a fair result. Defendants posted Craig's List ads which breached the agreement on a daily basis for about 180 days. Charging defendants $5,000 per day for the first 60 days justifies an award of $300,000 and a total arbitration award of $530,000.

CP at 169-70. Judge Burdell awarded NW Motorsports $530,000 in damages, as well as costs and attorney fees. The arbitration award was reduced to judgment against Sunset for $805,224.44.

C.    2016 LAWSUIT (CURRENT LITIGATION)

On October 20, 2016, NW Motorsport filed another complaint against Sunset. The complaint alleged (1) tortious interference with prospective advantage or business expectancy, (2) misappropriation of trade secrets, (3) false designation of trade names and marks and unfair competition, (4) trademark imitation, and (5) unjust enrichment. The complaint asserted that Sunset had a "bounty" program used to poach NW Motorsport's employees in an attempt to misappropriate NW Motorsport's trade secrets. CP at 6-8. The complaint also asserted that:

> 4.18    Sunset Trucks, Inc. has struggled to keep pace in the arena of legitimate competition. It has, accordingly, resorted to unfair competition and illegality. To quell this, Northwest Motorsport brought suit in 2011 (Exhibit A). Sunset paid a settlement, promised to refrain from further misconduct, and the matter was dismissed (Exhibit B). Sunset then breached the settlement agreement, forcing Northwest Motorsport to exercise its rights—again. The mutually-acceptable arbitrator, Charles Burdell, found that the Sunset violated the settlement (*i.e.*, "did exactly what they contracted not to do"), and awarded substantial damages (Exhibit C).
>
> 4.19    Nothing has changed, and the illegal acts referenced herein were outside of the settlement agreement. For example, the Defendants purchased search terms for "Trucks Trucks and More Trucks," as well as "Northwest Motorsport." Anyone searching for Northwest Motorsport's name or unique slogan—"Trucks Trucks and More Trucks"—was provided a prominent link to Sunset's webpage; although the link itself did not contain Northwest Motorsport's name or unique slogan (and, thus, was not in in contravention of the settlement agreement), the search yielded a link to Sunset's website *above* Northwest Motorsport's. Anyone searching for "Northwest Motorsport" or "Trucks Trucks and More Trucks" was thus prompted to Sunset's webpage. It is well known within the industry that the

4

more prominent the placement of a link, the higher the likelihood the customer will click on the link. By misappropriating Northwest Motorsport's trade name and marks, the Defendants enriched themselves while damaging Northwest Motorsport.

CP at 8-9.

NW Motorsport sought damages against Sunset. NW Motorsport also sought temporary and permanent injunctive relief from Sunset's attempts to misappropriate NW Motorsport's trade secrets. NW Motorsport also filed a motion for a temporary restraining order to prevent Sunset from attempting to misappropriate trade secrets through a targeted bounty system on NW Motorsport's employees. The superior court granted the temporary restraining order. Later, the superior court granted the preliminary injunction.

On July 13, 2017, NW Motorsport filed a first amended complaint. The first amended complaint replaced the allegations regarding purchasing search terms with the following allegation,

> 4.16     Additionally, in spite of the Sunset Defendants and their counsel working fastidiously to hide it, Northwest Motorsport recently uncovered documents evidencing its "Brand and Conquest Campaign," in which it spent nearly $100,000 purchasing terms forbidden by the parties' settlement agreement. Each purchase of Northwest Motorsport (or its permutations) constitute a "use in advertising," and, pursuant to the parties' agreement, Defendants are liable for liquidated damages.

CP at 1586. The first amended complaint also included an allegation for breach of contract based on Sunset's use of forbidden terms in advertising. NW Motorsport's claims based on the first amended complaint were (1) misappropriation of trade secrets based on attempting to poach NW Motorsport's employees, (2) injunction relief to prevent misappropriation of trade secrets through poaching NW Motorsport's employee's, (3) breach of contract for using prohibited terms through Google AdWords, and (4) trademark imitation.

The claims regarding misappropriation of trade secrets through employee recruitment were resolved when the superior court granted NW Motorsport's motion for partial summary judgment on trade secret misappropriation in the form of a permanent injunction. NW Motorsport's breach of contract claim was resolved in multiple partial summary judgment motions. And NW Motorsport's trademark imitation was voluntarily dismissed.

Sunset appeals the superior court's orders resolving the claims for misappropriation of trade secrets and breach of contract. Sunset also challenges one of the superior court's findings in an order granting discovery sanctions. The details of these orders are discussed below.

1.      Partial Summary Judgment Regarding Sunset's Liability

NW Motorsports filed a motion for partial summary judgment asking the superior court for an order ruling that Sunset was liable for breach of the settlement agreement. In addition to the undisputed facts regarding the terms of the settlement agreement outlined above, NW Motorsport provided the following undisputed facts regarding Sunset's use of Google AdWords:

- Sunset had purchased various permutations of Northwest Motorsport as Google AdWords
- Under the Google AdWords program, when a user performs a Google search for "Northwest Motorsport" the user sees an advertisement from Sunset in addition to the organic search results
- From December 2015 through July 2016 Sunset's use of Northwest Motorsport as a keyword in Google AdWords resulted in 12,047 customer impressions (views of Sunset's ads) and 564 clicks (user selecting Sunset's ad)

NW Motorsport argued that the use of "Northwest Motorsport" violated the plain language of the settlement agreement which prohibited the use of the term in advertising in any manner.

In response, Sunset argued that summary judgment was improper because the term "in advertising" was ambiguous. Sunset argued that NW Motorsport created the ambiguity by taking

two different positions on Sunset's liability: in the initial complaint, NW Motorsport claimed the use of Google AdWords did not violate the settlement agreement, but in the amended complaint, NW Motorsport alleged that the use of Google AdWords did violate the settlement agreement.

Sunset also argued that extrinsic evidence shows that the purpose of the settlement agreement provision prohibiting the use of certain terms in advertising was to prevent the use of the prohibited terms in advertisements and prevent consumer confusion. Because the advertisements displayed with Google AdWords did not contain prohibited terms, and because there was no proof of consumer confusion, the "use in advertising" term was subject to more than one reasonable interpretation and therefore was ambiguous.

The superior court granted NW Motorsport's motion for partial summary judgment on the breach of contract claim. The superior court concluded that "[a]s a matter of law, Defendants are liable for liquidated damages and attorneys' fees related to their breach of the settlement agreement." CP at 2296.

Sunset filed a motion for reconsideration of the superior court's order granting summary judgment on the breach of contract claim. The superior court denied the motion for reconsideration.

2. Partial Summary Judgment on Permanent Injunction

NW Motorsport also filed a motion for partial summary judgment on trade secret misappropriation in the form of a permanent injunction. NW Motorsport claimed that it had developed a "unique use of information technology" that allowed it to automate its advertising and marketing. CP at 2533. NW Motorsport alleged that the technology and code was in-house and

7

proprietary. NW Motorsport takes steps to secure this information including limiting access to the information, firewalls, and non-compete agreements.

Collin Pedersen, manager of NW Motorsport's IT department, signed a declaration, stating that Sunset repeatedly approached him about working at Sunset. Pedersen also stated that Sunset offered him $25,000 a month to work for them. When he informed Sunset that he had a non-compete agreement, Sunset stated, they would "take care of it." CP at 2586.

Other employees, who had left NW Motorsport to work at Sunset, signed declarations claiming that Sunset attempted to gain information from them regarding NW Motorsport's operations. They also stated that Sunset was actively trying to recruit Pedersen away from NW Motorsport. The declarations claimed that Mitchell was obsessed with NW Motorsport and getting its employees.

Sunset filed a response to NW Motorsport's motion, arguing that NW Motorsport had not met its burden to prove that it possesses a trade secret and its requested relief was moot because it was simply a restatement of the law. Sunset attached 19 exhibits to its response, but none of the exhibits included a declaration from Mitchell. However, a declaration from Mitchell had been filed in previous motions before the court. In the previously filed declaration, Mitchell declared that aggressive recruiting and "inter-dealership transition of valuable, talented employees is endemic in the industry." CP at 1713. Mitchell's declaration also stated,

> Sunset has never acquired any of [NW Motorsport]'s alleged trade secrets from any of [NW Motorsport]'s current or former employees through actual or attempted recruitment of any employee.

CP at 1714.

The superior court entered written findings of fact and conclusions of law granting the permanent injunction. The superior court's order identified the evidence reviewed and did not include any declarations from Mitchell. The superior court's written findings do not reference Mitchell's statements or any credibility determinations regarding Mitchell's statements. The superior court concluded that a permanent injunction was warranted. The superior court enjoined Sunset from attempting to misappropriate NW Motorsport's trade secrets. The superior court also enjoined "trade secret misappropriation through recruiting efforts directed to hiring individuals with the direct or indirect purpose of obtaining the information noted above." CP at 3317.

3.      Discovery Sanctions

NW Motorsport also filed a motion for discovery sanctions against Sunset. NW Motorsport's motion documented the discovery saga—dating back to the 2015 arbitration—which finally led to evidence from Google proving that Sunset did purchase Google AdWords related to NW Motorsport's trade names and trademarks.

a.      Discovery in the 2015 Arbitration

NW Motorsport's discovery requests in the 2015 arbitration included the following:

Interrogatory No. 2: For all truck-related internet-based marketing or advertising, please describe said marketing or advertising efforts utilized between January 1, 2013 and the present. The term "described" shall include, but is not limited to:
       a. listing every website on which you have advertised

Request for Production No. 1: Provide copies of all truck-related internet-based advertisements utilized between January 1, 2013 and the present.

CP at 1722 (emphasis omitted). Sunset refused to answer to discovery requests until ordered to do so by the arbitrator. Sunset produced ads posted on Craig's List and scripts for television and radio advertisements. Sunset did not disclose the advertisements posted on Google or its use of

9

Google AdWords. During the arbitration Mitchell and Conley denied purchasing Google AdWords.

> b.      Discovery in the Current Litigation

In the current litigation, NW Motorsport also sought discovery related to online advertising. One of the interrogatories requested that Sunset "identify every online platform on which you have advertised in the past ten (10) years." CP at 1725. Sunset objected to the interrogatory. Another interrogatory stated,

> With respect to every search engine, including, but not limited to, Google, Bing, and Yahoo! please identify every search term you purchased in the past ten (10) years. In so doing, please break down the purchased search term(s) by provider, and identify the dates which the search term was used, the amount paid for the search term, and the number of "clicks" each search term yielded.

CP at 1726. Sunset objected to answering this interrogatory.

Through letters, conferences, and emails, Sunset informed NW Motorsport that it had no personal involvement or knowledge regarding how the vendors it hired for online advertising do their job. And the various vendors Sunset contracted with had no relevant information regarding the purchase of Google AdWords.

In response, NW Motorsport served a subpoena duces tecum directly on Google.. Sunset brought a motion to quash the subpoena to Google. The superior court denied Sunset's motion to quash the subpoena. After the superior court denied the motion to quash the subpoena to Google, Sunset's counsel sent NW Motorsport a letter which contained a statement regarding an investigation into Google AdWords:

> Google AdWords: This Firm investigated Sunset's alleged Google AdWord purchases to make an offer of proof showing [NW Motorsport]'s AdWord-based claim has no merit. Neither Sunset nor its advertising agent Mike Conley purchase

Internet search terms. After extensive investigation by defense counsel, none of Sunset's current and past advertising vendors and employees that we contacted state they have ever purchased the AdWords. Moreover, [NW Motorsport] concedes that entering the AdWords at issue does not cause any Sunset advertisement to appear. After multiple increasingly convoluted document subpoenas, [NW Motorsport] still has provided no evidence of search term purchases causing consumer confusion, by Sunset or anyone else. [NW Motorsport] has caused significant waste regarding this topic, and has produced nothing from Google.

CP at 1728.

When Google responded to the subpoena, the Google documents showed that Sunset purchased various permutations of "Northwest Motorsport" as Google AdWords. CP at 1728. The account was registered to "Sunset RV & Truck" and "Phil Mitchell." CP at 1728. Sunset purchased these Google AdWords from December 29, 2015 until July 12, 2016.

NW Motorsport moved for discovery sanctions. At the hearing on the motion for discovery sanctions, Sunset argued extensively that it was justified in its discovery responses because of its interpretation of the scope of NW Motorsport's legitimate legal claims. The superior court called Sunset's explanation "outrageous." Verbatim Report of Proceeding (VRP) (Sept. 1, 2017) at 31. The superior court also addressed Sunset's responses during the discovery dispute in the current litigation:

THE COURT: Let's look at the first paragraph.
"I have spent many hours investigating Google AdWords. Neither Sunset nor Mike Conley have ever purchased Google AdWords. After dozens of calls, none of Sunset's current or past advertising vendors or employees state they have ever purchased the terms listed on Google's subpoena."
That's simply flat wrong.
[SUNSET]: But, again, the context of this is important because what I am referencing is this allegation that we tried to interfere with the production of documents.
I can understand how that first paragraph is untoward now.
THE COURT: Well, good.

11

No. 52799-5-II

VRP (Sept. 1, 2017) at 32. Sunset went on to explain that it was not disputing the superior court's characterization of the document, but insisted the point was that Sunset did not interfere with Google's response to the subpoena. The following exchange also took place:

> [SUNSET]: Your Honor, we've got information from each vendor based on Mr. Jenkins' investigation. We don't know if it was one of the vendors. We don't. And I wish I could –
> THE COURT: But we do know that Mr. Mitchell's name and contact information was on the account. And we do know that Sunset Chevrolet paid somewhere in the neighborhood of $100,000 to Google for this effort.
> [SUNSET]: That's what the documents from Google show.

VRP (Sept. 1, 2017) at 36.

The superior court entered written findings of fact and conclusions of law imposing discovery sanctions. The findings included a finding of fact regarding Mitchell and Conley's representations:

> The unrebutted evidence from Google reflects that Defendant Mitchell and Mr. Conley, on behalf of defendant Sunset, failed to respond truthfully to questions posed under oath and began what is fairly characterized as a pattern of deception in discovery. As the undisputed facts show, Sunset abruptly ended its Google AdWords Campaign the same day the witnesses were testifying at arbitration. It is clear to the Court that Mr. Mitchell and Mr. Conley knew exactly what they were doing. They did not disclose the information to [NW Motorsport], they simply shut the Brand and Conquest Advertising Campaign down.

CP at 3070. The superior court concluded,

> It is clear to the Court that, in the case at bar, Sunset and its representatives lied under oath, and there has been willful discovery misconduct by Sunset. This misconduct prejudiced [NW Motorsport] and violates the principles set forth in [case law]. The factual record and findings establish that evidence related to Sunset's Brand and Conquest campaign was responsive to and discoverable in both the arbitration proceeding and in this litigation. Sunset failed to produce the relevant evidence, and engaged in a pattern of deception and outright lies in an effort to conceal their evidence. The court finds this conduct egregious and sanctionable.

12

CP at 3074. The superior court imposed $75,000 in sanctions for the discovery violations.

After the superior court imposed the discovery sanction, Sunset filed two motions for reconsideration. The first motion for reconsideration was filed November 27, 2017. The second motion for reconsideration was filed July 3, 2018. The substance of both motions focused on the fact that Mitchell's and Conley's testimony during the arbitration was *technically* true because neither of them personally purchased Google AdWords, and neither party denied that third-party vendors had done so. The court denied both motions for reconsideration.

4.      Partial Summary Judgment Determining Violations

Both parties filed cross-motions for summary judgment on the number of violations of the settlement agreement based on the Google AdWords purchases. NW Motorsport argued that the number of violations should be based on the number of "clicks" Sunset received based on the use of Google AdWords. CP at 5259. Sunset argued that collateral estoppel required employing the definition used by Judge Burdell in the arbitration. The Court rejected both arguments and ordered both parties to present additional argument on the construction of the settlement agreement.

NW Motorsport argued that the superior court should find a violation for each day that Sunset ran the advertising campaign using prohibited terms as Google AdWords and utilize that as the basis for calculating liquidated damages. NW Motorsport argued that this interpretation complied with the focus on Sunset's actions because Sunset could shut down the campaign anytime it chose to do so. Therefore, the court should impose $5,000 a day in liquidated damages for each of the 197 days that Sunset used prohibited terms as part of Google AdWords. NW Motorsports also argued that limiting the number of violations to each keyword selected was unreasonable because "[c]ommon sense does not support an outcome in which Sunset gets to open-

endedly utilize [NW Motorsport]'s valuable trademarks—forever—in return for $5,000, or even $250,000." CP at 5267.

In contrast, Sunset argued that the only reasonable construction of violation should focus on its own actions in selecting keywords. Sunset also argued that the purpose of the liquidated damages clause was to compensate NW Motorsport for a lost customer and there was no indication that NW Motorsport lost a customer each day that Sunset ran its advertising campaign. Sunset further argued that allowing NW Motorsport to collect $985,000 of damages based on a per-day definition of violation results in a windfall for NW Motorsport. Therefore, according to Sunset, the superior court should consider the number of keywords selected as the basis for calculating liquidated damages. Sunset asserted that there were only 10 violations of the settlement agreement, based on the selection of 10 prohibited keywords.

The superior court entered an order construing the settlement agreement. The superior court determined that Sunset "breached the parties' 2013 Settlement agreement 197 times, which constitutes the number of days that Sunset ran its Google AdWords advertising campaign." CP at 5962. Following the determination of the merits of all of NW Motorsport's claims, the superior court also awarded NW Motorsport its attorneys' fees and costs.

Sunset appeals.

ANALYSIS

A.  STANDARD OF REVIEW FOR SUMMARY JUDGMENT

We review the superior court's order granting summary judgment de novo. *Evans v. Tacoma Sch. Dist. No. 10*, 195 Wn. App. 25, 34, 380 P.3d 553, *review denied*, 186 Wn.2d 1028 (2016). Summary judgment is appropriate when the pleadings, affidavits, depositions, and

admissions on file demonstrate the absence of any genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). "A material fact is one on which the litigation's outcome depends in whole or in part." *TT Props. v. City of Tacoma*, 192 Wn. App. 238, 245, 366 P.3d 465, *review denied*, 185 Wn.2d 1036 (2016). When determining whether a genuine issue of material fact exists, this court considers all the evidence and reasonable inferences in the light most favorable to the nonmoving party. *Evans*, 195 Wn. App. at 34. Summary judgment is proper if, after reviewing all the evidence, a reasonable person could reach only one conclusion. *Kelsey Lane Homeowners Ass'n v. Kelsey Lane Co., Inc.*, 125 Wn. App. 227, 232, 103 P.3d 1256 (2005).

The superior court should not resolve issues of credibility on summary judgment. *Howell v. Spokane & Inland Empire Blood Bank*, 117 Wn.2d 619, 626, 818 P.2d 1056 (1991). "An issue of credibility is present only if the party opposing the summary judgment motion comes forward with evidence which contradicts or impeaches the movant's evidence on a material issue." *Id.*

B.    LEGAL PRINCIPLES OF CONTRACT INTERPRETATION

We interpret settlement agreements the same way that this court interprets other contracts. *McGuire v. Bates*, 169 Wn.2d 185, 188, 234 P.3d 205 (2010). "The touchstone of contract interpretation is the parties' intent." *Tanner Elec. Co-op v. Puget Sound Power & Light Co.*, 128 Wn.2d 656, 674, 911 P.2d 1301 (1996). We do not discern the parties' intent from the language of the contract alone:

> In Washington, the intent of the parties to a particular agreement may be discovered not only from the actual language of the agreement, but also from "viewing the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and

15

conduct of the parties to the contract, and the reasonableness of respective interpretations advocated by the parties."

*Scott Galvanizing, Inc. v. Nw. EnvironServices, Inc.*, 120 Wn.2d 573, 580-81, 844 P.2d 428 (1993) (quoting *Berg v. Hudesman*, 115 Wn.2d 657, 667, 801 P.2d 222 (1990)). If "only one reasonable inference can be drawn from the extrinsic evidence," we can determine the contract's meaning as a matter of law. *Id* at 582.

When interpreting contracts, we will normally give words their "'general and ordinary accepted meaning and connotation' unless otherwise defined by the parties or by the dictates of the context." *Blue Mountain Mem'l Gardens v. Dep't of Licensing, Cemetery Bd.*, 94 Wn. App. 38, 43, 971 P.2d 75 (quoting *Keeton v. Dep't of Soc. & Health Servs.*, 34 Wn. App. 353, 360-61, 661 P.2d 82, *review denied*, 99 Wn.2d 1022 (1983)), *review denied*, 138 Wn.2d 1011 (1999). "Washington follows the 'objective manifestation theory' of contract interpretation, under which the focus is on the reasonable meaning of the contract language to determine the parties' intent." *Viking Bank v. Firgrove Commons 3, LLC*, 183 Wn. App. 706, 712-13, 334 P.3d 116 (2014). Therefore, the "subjective intent of the parties is generally irrelevant if the intent can be determined from the actual words used." *Brogan & Anensen LLC v. Lamphiear*, 165 Wn.2d 773, 776, 202 P.3d 960 (2009).

"If a contract provision's meaning is uncertain or is subject to two or more reasonable interpretations after analyzing the language and considering extrinsic evidence (if appropriate), the provision is ambiguous." *Viking Bank*, 183 Wn. App. at 713. If the contract is ambiguous, we construe it against the drafter. *Id*. If the parties drafted the contract together, we "adopt the interpretation that is the most reasonable and just." *Id*.

C.   SUNSET'S LIABILITY REGARDING GOOGLE ADWORDS

Sunset appeals the superior court's order granting NW Motorsport's motion for partial summary judgment and determining Sunset was liable for breaching the settlement agreement by bidding on NW Motorsport's trademarks in Sunset's Google AdWords campaign. Sunset argues that, as a matter of law, bidding on keywords is not a violation of the settlement agreement because it is not a "use in advertising". Br. of Appellant at 25. Sunset also argues that NW Motorsport's original complaint created a genuine issue of fact because the complaint conceded that bidding on keywords does not violate the settlement agreement.

1.   "Use In Advertising In Any Manner or Variation"

First, Sunset claims that the use of prohibited terms in Google AdWords does not violate the settlement agreement. Sunset argues that the circumstances surrounding the settlement agreement demonstrate that this provision was meant to prohibit only the use of those terms in *advertisements* that caused consumer confusion. But Sunset's argument ignores the broad language of the provision found in the settlement agreement. In the settlement agreement, Sunset agreed "not to use *in advertising in any manner or variation* the terms 'Northwest Motorsport,' 'NWMSrocks,' or the words 'truck' or 'trucks' consecutively in the same phrase or sentence." CP at 83 (emphasis added).

Sunset's interpretation ignores the actual language used in the provision. "Advertising" is a much broader concept than just an "advertisement." Advertise means "to make known to" or "to give notice to." WEBSTER'S THIRD INTERNATIONAL DICTIONARY at 31 (1993). And the inclusion of the phrase "in any manner or variation" emphasizes that there were no limitations imposed on the understanding of "advertising." Therefore, the ordinary understanding of the

provision prohibits Sunset from using the specified term in any manner or variation that makes the business known or that gives notice of its business.

The use of Google AdWords clearly falls within this definition of advertising. The entire purpose of purchasing Google AdWords is to make a business known to people who are searching for specific terms. By bidding on "Northwest Motorsport" as a Google AdWord, Sunset was specifically using the term to help make its business known because it was ensuring that one of its own advertisements would be prominently displayed when the search term was used. There is no reasonable argument that the use of Google AdWords does not fall within the broad language used in the settlement agreement.

Sunset attempts to rely on extrinsic evidence from the prior dispute to narrow the meaning of the settlement agreement. Sunset argues that all prior disputes were based on actual advertisements that used the prohibited terms to cause consumer confusion. But this assertion is belied by the record. For example, the 2015 arbitration was based on advertisements that used the prohibited terms. But the Craigslist postings at issue used the prohibited terms in small text at the bottom of the ad for the purpose of optimizing search results, not to capitalize on the terms through consumer confusion. There is little meaningful difference between burying prohibited terms in the text of a posting to optimize search results and using those terms as the trigger that displays an advertisement without those terms in the text itself. Both are forms of advertising through search engine optimization.[1]

---

[1] Sunset's reliance on trademark infringement cases that hold otherwise is irrelevant. NW Motorsport's trademark infringement claims have been dismissed and are not before us. The issue before this court is whether Sunset's conduct violated the terms of the settlement agreement, which is much broader than the narrow scope of trademark infringement. If the parties had intended that

An objective interpretation of the settlement agreement encompasses purchasing the prohibited terms as Google AdWords. *Viking Bank*, 183 Wn. App. at 712-13. Therefore, the superior court did not err by granting NW Motorsport's motion for partial summary judgment and concluding that Sunset violated the terms of the settlement agreement.

2.  Genuine Issue of Material Fact Created by Original Complaint

Second, Sunset argues that NW Motorsport's original complaint is a judicial admission, which creates a genuine issue of material fact regarding the contract interpretation. Sunset contends that NW Motorsport's statements in its original complaint are judicial admissions that create a genuine issue of material fact regarding the interpretation of the settlement agreement. However, because the statement in NW Motorsport's original complaint was a subjective interpretation and not a statement of fact, it did not create a genuine issue of material fact that precluded summary judgment.

"'Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir.1988) (quoting *In re Fordson Engineering Corp.*, 25 B.R. 506, 509 (Bankr.E.D.Mich.1982)). "Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them." *Id.*

Here, NW Motorsport's original complaint does not include any factual assertions that dictate the interpretation of the contract. The issue before us is the language of the settlement

---

the scope of the settlement agreement was intended only to provide liquidated damages for further trademark infringement violations it could have clearly stated that intention.

agreement, and the only reasonable, objective interpretation of "use in advertising in any manner or variation" is that this provision applies to Sunset's use of Google AdWords. *Viking Bank*, 183 Wn. App. at 712-13. NW Motorsport's subjective interpretation of the provision in its original complaint is not a factual assertion that changes the objective interpretation of the settlement agreement. Therefore, the statement Sunset relies on is not a judicial admission because it is not a factual assertion. Accordingly, the superior court did not err in granting NW Motorsport's motion for partial summary judgment on Sunset's liability for breach of the settlement agreement.

D. DEFINITION OF "VIOLATION" FOR IMPOSING LIQUIDATED DAMAGES

Sunset argues that the superior court erred by granting NW Motorsport's motion for partial summary judgment and determining that Sunset violated the settlement agreement each day that the Google AdWords campaign using NW Motorsports' keywords was active. Specifically, Sunset argues that the superior court's interpretation of "violation" is not consistent with Judge Burdell's interpretation during the arbitration, which should be given preclusive effect based on collateral estoppel. Sunset also argues that the only fair and reasonable interpretation of the term "violation" is "per-keyword." Br. of Appellant at 37. We disagree.

Collateral estoppel does not apply to Judge Burdell's interpretation of violation in the arbitration and a "per-day" penalty is a reasonable interpretation of the settlement agreement. Therefore, the superior court did not err in construing the settlement agreement.

1. Collateral Estoppel

We review the application of collateral estoppel de novo. *Schiebel v. Eymann*, 189 Wn.2d 93, 98, 399 P.3d 1129 (2017). Collateral estoppel bars relitigation of an issue in a later proceeding involving the same parties. *Id.* at 99.

20

> For collateral estoppel to apply, the party seeking it must show (1) the issue in the earlier proceeding is identical to the issue in the later proceeding, (2) the earlier proceeding ended with a final judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party, or in privity with a party, to the earlier proceeding, and (4) applying collateral estoppel would not be an injustice.

*Id*.

Here, there is no dispute that the arbitration ended with a final judgment or that the parties are the same. The primary issue is whether the issue here (the correct number of violations based on the Google AdWords campaign) is identical to the issue in the arbitration (the correct number of violations based on radio and television ads, and Craig's List postings). Because of the scope of the settlement agreement provision prohibiting the use of certain terms "in advertising in any manner or variation," it is unlikely that a single definition of "violation" could govern all conceivable violations of that provision. This is evident because the arbitrator did not even apply a single definition of "violation" within the case before him. Because of the differences between radio/television advertising and Craig's List advertising, the arbitrator could not reach a just result by applying the same definition of "violation" to both types of advertising.

The same is true here. Although parallels can be drawn between Google AdWords and either radio/television advertising or Craig's List advertising, neither one of them directly fits the circumstances. Because Google AdWords is a different type of advertising, the issue of what constitutes a "violation" in this case is not identical to the issue that was decided in arbitration. Therefore, we do not apply collateral estoppel to the determination of "violation" in this case.[2]

---

[2] Even if we attempted to apply collateral estoppel, it is unclear exactly how that would apply. Sunset claims this would mean that only Sunset's affirmative acts are violations and it requires the "per-keyword" definition of "violation." But this is not actually consistent with the arbitrator's decision. If that was the strict definition, Sunset would have been liable for each post it made to

2. Interpretation of Violation

Sunset also argues that the only reasonable and just interpretation of "violation" under the terms of the settlement agreement is based on a "per-keyword" definition. Br. of Appellant at 37. Sunset bases this argument on its assertion that the definition of "violation" should be directly tied to the damages actually caused by Sunset's acts. We disagree.

For the purposes of determining the meaning of "violation" in the settlement agreement, it is important to place the term within the context of the liquidated damages provision it is a part of. In Washington, a provision for liquidated damages will be upheld unless "it is a penalty or otherwise unlawful." *Wallace Real Estate Inv., Inc. v. Groves*, 124 Wn.2d 881, 886, 881 P.2d 1010 (1994). "'A provision in a contract which bears no reasonable relation to actual damages will be construed as a penalty.'" *Walter Implement, Inc. v. Focht*, 107 Wn.2d 553, 559, 730 P.2d 1340, 1343 (1987) (quoting *Northwest Collectors v. Enders*, 74 Wash.2d 585, 594, 446 P.2d 200 (1968)). Liquidated damages agreements "fairly and understandingly entered into by experienced, equal parties with a view to just compensation for the anticipated loss" should be enforced. *Wallace Real Estate*, 124 Wn.2d at 886 (citing *Walter Implement*, 107 Wn.2d at 558). The injured party does not have to show actual loss, except to show what loss was anticipated. *Id* at 891.

---

Craig's List (which numbered in the thousands). So affirmative action by Sunset is only one aspect of the definition of "violation" under the settlement agreement.

Furthermore, the arbitrator actually did apply a "per-day" definition of "violation" for the purposes of the Craig's List postings because that created the most reasonable and just result. Therefore, a "per-day" definition of "violation" could be considered consistent with the arbitrator's prior ruling.

Liquidated damages provisions are enforceable if "(1) the amount so fixed is a reasonable forecast of just compensation for the harm caused by the breach, and (2) the harm caused by the breach is incapable or very difficult of accurate estimation." *Wallace Real Estate*, 124 Wn.2d at 889. Because the harm caused by the breach of an agreement not to compete in business is very difficult to ascertain, the court then focuses on whether the forecasted damage amount is reasonable. *Walter Implement*, 107 Wn.2d at 559. Reasonableness of the forecast will be judged as of the time the contract was entered into. *Id*. Determination of whether the test is met depends on a case-by-case evaluation of the facts and circumstances of each case. *Id*.

Here, Sunset emphasizes that a "per-day" definition of violation is inappropriate because it is inconsistent with the notion that each violation results in the loss of a customer. But that is not the purpose of the liquidated damages provision. As demonstrated by the extensive background of litigation, it is extremely difficult to ascertain the actual amount of damages resulting from Sunset's improper advertising. Therefore, it was reasonable to include a liquidated damages provision with reasonable relation to the damages caused by the loss of customer.

But liquidated damages provisions are based on *anticipated* losses resulting from the improper conduct. As it applies to this case, each day that Sunset had open bids on a prohibited word there was the possibility that they would gain and/or NW Motorsport would lose a customer based on Sunset improperly capitalizing on NW Motorsport's trademarks. Therefore, it is entirely reasonable to apply the liquidated damages provision through a "per-day" definition of violation. Because a "per-day" definition of violation results in a reasonable application of the liquidated damages provision, the superior court did not err in interpreting the settlement agreement.

E.    PERMANENT INJUNCTION

Sunset argues that the superior court erred by granting NW Motorsports' motion for summary judgment and imposing the permanent injunction because the superior court improperly weighed the credibility of evidence and determined an issue of fact on summary judgment. Because the declaration that Sunset asserts creates a genuine issue of material fact was not properly before the superior court for consideration, the superior court did not err by granting NW Motorsport's motion for partial summary and imposing a permanent injunction.

Under RCW 19.108.020(1), the superior court may grant an injunction to prevent actual or threatened misappropriation. Injunctive relief for the protection of trade secrets under the Uniform Trade Secrets Act (UTSA), chapter 19.108 RCW, follow the standard of CR 65. *Lyft, Inc. v. City of Seattle*, 190 Wn.2d 769, 784, 418 P.3d 102 (2018). Therefore,

> "one who seeks relief by temporary or permanent injunction must show (1) that he has a clear legal or equitable right, (2) that he has a well-grounded fear of immediate invasion of that right, and (3) that the acts complained of are either resulting in or will result in actual and substantial injury to him."

*Id.* (internal quotation marks omitted) (quoting *Tyler Pipe Industries, Inc. v. Dep't of Revenue*, 96 Wn.2d 785, 792, 638 P.2d 1213 (1982)).

NW Motorsport correctly points out that Mitchell's declaration was never before the superior court on this motion for partial summary judgment. Any declarations that Mitchell submitted in this case were attached to *other* motions in this case. The superior court is not obligated to consider declarations attached to different motions when determining a summary judgment motion. *Puget Sound Security Patrol, Inc. v. Bates*, 197 Wn. App. 461, 468, 389 P.3d 709 (2017). Because Mitchell's declaration was never actually submitted in support of Sunset's

response to NW Motorsport's motion for summary judgment, the superior court properly refused to consider it as not before the court for consideration.

Although the superior court orally acknowledged that Mitchell had previously denied that Sunset tried to obtain trade secrets, the superior court's written order controls on appeal. *Pham v. Corbett*, 187 Wn. App. 816, 830-31, 351 P.3d 214 (2015). The superior court's written order does not identify Mitchell's declaration as having been considered by the superior court in granting the permanent injunction.

Mitchell's declaration was not properly before the superior court for consideration, and the superior court's written order shows that the superior court did not consider it. Accordingly, the superior court did not err in granting NW Motorsport's motion for partial summary judgment and imposing the permanent injunction.

F.    FINDING THAT MITCHELL AND CONLEY "FAILED TO RESPOND TRUTHFULLY TO QUESTIONS POSED UNDER OATH"

Sunset appeals the superior court's finding that Mitchell and Conley committed perjury by failing to respond truthfully to questions posed under oath. Sunset does not argue that the superior court abused its discretion in imposing discovery sanctions in this case. Instead, it only argues that the superior court's finding in its discovery sanctions order that Mitchell and Conley failed to respond truthfully to questions posed under oath during the 2015 arbitration was not supported by substantial evidence. Sunset's argument is essentially that the superior court erred because Mitchell and Conley's testimony in 2005 was *technically* true because Mitchell and Conley did not personally buy Google AdWords; instead, all internet advertising was outsourced to independent contractors that Sunset implied Mitchell and Conley had no responsibility for.

Because the superior court's finding does not prejudicially affect any decision Sunset has properly appealed, Sunset's argument is misplaced.

Although Sunset argues that substantial evidence does not support the superior court's finding that Mitchell and Conley "failed to respond truthfully to questions posed under oath," the argument fails to recognize that the superior court's order imposed sanctions based on *discovery violations*, not based on the perjury. CP at 3070. Because Sunset does not challenge the superior court's order imposing discovery sanctions,[3] the superior court's finding regarding Mitchell's and Conley's perjury in the arbitration proceeding is superfluous and any error in the finding does not prejudicially affect the decisions designated in the notice of appeal. Therefore, there is no basis for us to review a substantial evidence challenge to the superior court's finding that Mitchell and Conley failed to respond truthfully to questions posed under oath.

To the extent Sunset also argues that the superior court erred by refusing to consider "newly-discovered evidence" in its motions for reconsideration, this argument has no merit. Br. of Appellant at 46. First, Sunset does not explain how testimony in the 2015 arbitration would be considered "newly-discovered." Sunset was obviously aware of the allegations NW Motorsport was making in its motion for discovery sanctions and Sunset failed to refute those in its response. And obviously, Sunset was aware of the substance of the 2015 arbitration testimony prior to the hearing on discovery sanctions. Evidence is not newly-discovered simply because Sunset's first argument to avoid liability based on its interpretation of the scope of the discovery requests failed.

---

[3] See Appellants' Reply Brief at 18, footnote 14.

Moreover, under CR 59(b), a motion for reconsideration must be filed within 10 days of the order to warrant consideration by the court. Here, the superior court's order was filed on November 13, 2017. The first motion for reconsideration was filed on November 27—14 days after the superior court's ruling. The second motion for reconsideration was filed on July 3, 2018—more than six months after the superior court's order. Sunset has offered no argument why the superior court was required to consider these untimely motions for reconsideration at all. *See* CR 59(b).

## ATTORNEY FEES ON APPEAL

NW Motorsport requests attorney fees on appeal under RAP 18.1(a) and the settlement agreement.

RAP 18.1(a) allows for this court to grant reasonable attorney fees or expenses "[i]f applicable law grants to a party the right to recover reasonable attorney fees or expenses on review." "Reasonable attorney fees are recoverable on appeal if allowed by statute, rule, or contract." *In re Guardianship of Wells*, 150 Wn. App. 491, 503, 208 P.3d 1126 (2009).

Here, the settlement agreement states that "actual attorneys' fees and costs shall be awarded to the prevailing party" on any dispute regarding compliance with the terms of the agreement. CP 84. The settlement agreement specifically addresses trademark infringement and unfair competition arising from Sunset's use of Northwest's trademarks, it does not address trade secrets.

NW Motorsport is the prevailing party on claims arising under the settlement agreement, and it is entitled to reasonable attorney fees and costs associated with this appeal for those issues. Because protection of trade secrets is not covered by the settlement agreement, attorney fees associated with the issue related to the permanent injunction are denied.

No. 52799-5-II

We affirm the superior court's challenged orders and judgment in favor of NW Motorsport.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

, C.J.
Lee, C.J.

We concur:

Glasgow, J.

Cruser, J.